**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**MOBILE DIVISION**

| | |
|---|---|
| **CONTESSA ATCHISON,** *individually and on behalf of others similarly situated*, | |
| **Plaintiff,** | |
| **v.** | **CASE NO.** |
| **CARDIOLOGY ASSOCIATES OF MOBILE, INC.** | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

## CLASS ACTION COMPLAINT

Plaintiff Contessa Atchison ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated, alleges the following Class Action Complaint (the "Action") against Defendant Cardiology Associates of Mobile ("Cardiology Associates" or "Defendant") upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel as follows:

### I.    SUMMARY

1.    This action arises out of the public exposure of the confidential, private information of Defendant's current and former patients, Personally Identifying Information[1] ("PII") and

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Defendant, not every type of information included in that definition was compromised in the Data Breach.

Protected Health Information ("PHI")[2] (collectively "Personal Information"), including of Plaintiff and the Class Members, which was in the possession of Defendant during on its systems, on or around October 22, 2023, caused by Defendant's failures to adequately safeguard that Personal Information ("the Data Breach").

2.       In a Notice of Data Breach letter, Cardiology Associates sent to Plaintiff and Class Members on or around January 8, 2025, Cardiology Associates explains[3]:

**What Happened?**
On or about October 22, 2024, Cardiology Associates detected it was the target of a data security incident. An unauthorized third party attempted to infiltrate Cardiology Associates' computer network. Upon detecting the incident, Cardiology Associates moved quickly to secure its network environment, notified federal law enforcement and launched a thorough investigation. The investigation was performed with the help of independent IT security and forensic investigators to determine the scope and extent of the potential unauthorized access of our systems and any personal information. The forensic investigation concluded on December 13, 2024.

---

[2] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its implementing regulations ("HIPAA"), "protected health information" is defined as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. A "covered entity" is further defined as, *inter alia*, a group health plan. *Id. Covered entity, Health plan*. A "business associate" is defined as, with respect to a covered entity, a person who: "creates, receives, maintains, or transmits protected health information for a function or activity regulated by [HIPAA], including claims processing or administration, data analysis, processing or administration, utilization review, quality assurance, patient safety activities listed at 42 CFR 3.20, billing, benefit management, practice management and repricing…" *Id. Business associate*. Health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, Dep't for Health & Hum. Servs., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last accessed Apr. 5, 2022). Medusind is clearly a "covered entity," subject to HIPAA, and some of the PHI compromised in the Data Breach is "protected health information," subject to HIPAA.

[3] Notice of Data Security Incident ("Notice") attached hereto as **Exhibit A**.

**What Information Was Involved?**

Although Cardiology Associates has found no evidence your information has been specifically accessed for misuse or publicly released, out of an abundance of caution, it is possible, your name, date of birth, Social Security number, health insurance policy number, and/or protected health information may have been temporarily held by an unauthorized actor during this incident. Notably, the types of information affected were different for each individual, and not ever individual had all the elements listed above exposed. Rest assured, we have taken all available steps to prevent further access to your personal data.

3.      To be clear – there are numerous issues with Cardiology Associate's Data Breach, but the deficiencies in the Data Breach notification letter exacerbate the circumstances for victims of the Data Breach: (1) Cardiology Associates waited nearly ***three*** months to notice Plaintiff and Class members of the Data Breach; (2) Cardiology Associates fails to state whether it was able to contain or end the cybersecurity threat, leaving victims to fear whether the Private Information that Cardiology Associates continues to maintain is secure; (3) Cardiology Associates fails to state how the breach itself occurred. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

4.      As a result of the Data Breach, Plaintiff and Class Members suffered injury and ascertainable losses in the form of the present and imminent threat of fraud and identity theft, loss of the benefit of their bargain, out-of-pocket expenses, loss of value of their time reasonably incurred to remedy or mitigate the effects of the attack, and the loss of, and diminution in, value of their personal information.

5.      In addition, Plaintiff's and Class Members' sensitive Personal Information —which was entrusted to Defendant — was compromised and unlawfully accessed due to the Data Breach. This information, while compromised and taken by unauthorized third parties, remains also in the

possession of Defendant, and without additional safeguards and independent review and oversight, remains vulnerable to future cyberattacks and theft.

6.     The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect victims' Personal Information.

7.     Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that Defendant collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party.

8.     Defendant maintained the Personal Information in a reckless manner. In particular, the Personal Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks.

9.     The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Personal Information was a known risk to Defendant and entities like it, and Defendant was thus on notice that failing to take steps necessary to secure the Personal Information against those risks left that property in a dangerous condition and vulnerable to theft. Defendant was further on notice of the severe consequences that would result to Plaintiff and Class Members from its failure to safeguard their Personal Information.

10.    Defendant disregarded the rights of Plaintiff and Class Members (defined below) by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices

to safeguard Plaintiff's and Class members' Personal Information; failing to take standard and reasonably available steps to prevent the Data Breach; failing to properly train its staff and employees on proper security measures; and failing to provide Plaintiff and Class Members prompt notice of the Data Breach.

11.     In addition, Defendant and its employees failed to properly monitor the computer network and systems that housed the Personal Information. Had Defendant properly monitored its computer network and systems, it would have discovered the intrusion sooner, as opposed to letting cyberthieves roam freely in Defendant's IT network for months or even years.

12.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the Personal Information that Defendant collected and maintained is now in the hands of data thieves. This present risk will continue for their respective lifetimes.

13.     Armed with the Personal Information accessed in the Data Breach, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

14.     As a result of the Data Breach, Plaintiff and Class Members have been exposed to a present and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

15.     Plaintiff and Class Members will incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

16.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Personal Information was accessed during the Data Breach.

17.     Plaintiff seeks remedies including, but not limited to, actual damages, compensatory damages, nominal damages, and reimbursement of out-of-pocket costs.

18.     Plaintiff also seeks injunctive and equitable relief to prevent future injury on behalf of himself and the putative Class.

## II.    JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, and at least one Class member is a citizen of a state that is diverse from Defendant's citizenship.[4] Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.     This Court has personal jurisdiction over Defendant Cardiology Associates, because its principal place of business in Alabama, and does a significant amount of business in New York.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Cardiology Associates, has its principal place of business located in this District, and a substantial part of the events giving rise to this action occurred in this District.

---

[4] See https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (Number of Texans Affected: 502); https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/44cf96ae-ef1f-4217-8146-6edefba87427.html (Number of Maine residents affected: 1); https://www.mass.gov/doc/data-breach-report-2025/download (MA Residents Affected: 37).

### III.    PARTIES

*Plaintiff Contessa Atchison*

22.    Plaintiff Contessa Atchison is an individual resident and citizen of the State of Alabama and received a Notice of Data Breach letter from Defendant on or around January 8, 2025. Plaintiff's data was exposed because she was a patient of Defendant.

23.    As a condition of receiving services, Defendant required Plaintiff to provide them with her PII/PHI.

24.    Based on representations made by Defendant, Plaintiff believed Defendant implemented and maintained reasonable security to protect her PII/PHI.

25.    If Plaintiff had known that Defendant would not adequately protect her Private Information, she would not have allowed Defendant to maintain this sensitive Private Information.

*Defendant Cardiology Associates of Mobile*

26.    Defendant Cardiology Associates of Mobile is an Alabama corporation with its principal place of business located in Mobile, Alabama. Defendant provides cardiovascular care.

### IV.    FACTUAL ALLEGATIONS

*Defendant's Business*

27.    According to Defendant Cardiology Associates' website[5]:

Cardiology Associates provides the most comprehensive cardiovascular care in the area and ranks among the top cardiology private practices in the nation. By treating the person, not just the symptoms, our physicians forge an alliance that helps ensure the health and well-being of every patient. The team at Cardiology Associates is committed to providing the highest quality cardiovascular care in the Gulf Coast region. Ever mindful of the financial impact of cardiovascular care, we strive to provide the most comprehensive yet cost-effective treatment possible.

---

[5] https://www.cardassoc.com/about-us (last accessed Jan. 14, 2025)

28.    Defendant collects personally identifiable information in the course of doing business. This personally identifiable information includes the Personal Information which was compromised in the Data Breach alleged herein.

29.    Prior to being patients, Plaintiff and Class Members were required to and did in fact turn over their Personal Information.

30.    Upon information and belief, Defendant promises to maintain the confidentiality of Plaintiff's and Class Members' Personal Information to ensure compliance with federal and state laws and regulations, and not to use or disclose Plaintiff's and Class Members' Personal Information for non-essential purposes.

31.    As a condition of receiving services from Cardiology Associates, Cardiology Associates requires that Plaintiff and Class Members entrust it with highly sensitive personal information.

32.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Personal Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Personal Information from unauthorized disclosure.

33.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Personal Information. Plaintiff and Class Members would not have entrusted Defendant with their Personal Information had they known that Defendant would fail to implement industry standard protections for that sensitive information.

34.    Plaintiff and the Class Members relied on Defendant to keep their Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

*The Attack and Data Breach*

35.    On January 8, 2025, Defendant informed Plaintiff and the Class Members via the

Notice[6] that:

> **What Happened?**
> On or about October 22, 2024, Cardiology Associates detected it was the target of a data security incident. An unauthorized third party attempted to infiltrate Cardiology Associates' computer network. Upon detecting the incident, Cardiology Associates moved quickly to secure its network environment, notified federal law enforcement and launched a thorough investigation. The investigation was performed with the help of independent IT security and forensic investigators to determine the scope and extent of the potential unauthorized access of our systems and any personal information. The forensic investigation concluded on December 13, 2024.
>
> **What Information Was Involved?**
> Although Cardiology Associates has found no evidence your information has been specifically accessed for misuse or publicly released, out of an abundance of caution, it is possible, your name, date of birth, Social Security number, health insurance policy number, and/or protected health information may have been temporarily held by an unauthorized actor during this incident. Notably, the types of information affected were different for each individual, and not ever individual had all the elements listed above exposed. Rest assured, we have taken all available steps to prevent further access to your personal data.

36.    The Personal Information that was compromised includes but is not limited to

name, date of birth, Social Security number, health insurance policy number, and/or protected

health information.

37.    Due to Defendant's inadequate security measures, Plaintiff and the Class Members

now face a present, immediate, and ongoing risk of fraud and identity theft and must deal with that

threat forever.

38.    Upon information and belief, the Personal Information was not encrypted prior to

the data breach.

---

[6] **Exhibit A.**

39.     Upon information and belief, the cyberattack was targeted at Defendant as a company that collects and maintains valuable personal and financial data from its many patients, including Plaintiff and Class Members.

40.     Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the Personal Information of Plaintiff and Class Members.

41.     Defendant had obligations to keep Plaintiff's and Class Members' Personal Information confidential and to protect it from unauthorized access and disclosure.

42.     Plaintiff and Class Members provided their Personal Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

***The Data Breach Was Foreseeable and the Defendant Was Aware of Its Risk***

43.     It is well known that Personal Information, including Social Security numbers and names in particular are invaluable commodities and a frequent target of hackers.

44.     In 2023, a record 3,205 data breaches occurred in the United States, resulting in about 349,221,481 sensitive records being exposed, a greater than 100% increase from 2019.[7]

45.     Individuals place a high value not only on their Personal Information, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

---

[7] ITRC (Identity Theft Resource Center), *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last accessed October 9, 2024).

46.    In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), and, in light of the recent data breaches Wells Fargo has suffered, Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

47.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

48.    Despite the prevalence of public announcements of data breach and data security compromises, and despite their own acknowledgment of its duties to keep Personal Information private and secure, Defendant failed to take appropriate steps to protect the Personal Information of Plaintiff and the proposed Class from being compromised.

### *Defendant Had a Duty to Plaintiff and Class Members to Secure Personal Information*

49.    At all relevant times, Defendant had a duty to Plaintiff and Class Members to properly secure their Personal Information, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to *promptly* notify Plaintiff and Class Members when Defendant became aware that their Personal Information may have been compromised.

50.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class

relied on Defendant to secure their Personal Information when they entrusted Defendant with the information required for receiving healthcare services.

51.     Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

52.     Security standards commonly accepted among businesses that store Personal Information using the internet include, without limitation:

a.     Maintaining a secure firewall configuration;

b.     Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c.     Monitoring for suspicious or irregular traffic to servers;

d.     Monitoring for suspicious credentials used to access servers;

e.     Monitoring for suspicious or irregular activity by known users;

f.     Monitoring for suspicious or unknown users;

g.     Monitoring for suspicious or irregular server requests;

h.     Monitoring for server requests for Personal Information;

i.     Monitoring for server requests from VPNs; and

j.     Monitoring for server requests from Tor exit nodes.

53.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[8] The FTC describes "identifying information" as "any name or number that may be used, alone or

---

[8] 17 C.F.R. § 248.201 (2013).

12

in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[9]

54.     The ramifications of Defendant's failure to keep Personal Information secure are long lasting and severe. Once Personal Information is stolen, fraudulent use of that information and damage to victims is likely to continue for years.

***The Value of Personally Identifiable Information***

55.     The Personal Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[10] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[11]

56.     As a growing number of federal courts have begun to recognize the loss of value of Personal Information as a viable damages theory, the sale of Personal Information from data

---

[9] *Id.*

[10]  *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*:  https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed October 9, 2024).

[11]  *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at*: https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed October 9, 2024).

breaches, as in the Data Breach alleged herein, is particularly harmful to data breach victims –
especially when it takes place on the dark web.

57.     The dark net is an unindexed layer of the internet that requires special software or
authentication to access.[12] Criminals in particular favor the dark web as it offers a degree of
anonymity to visitors and website publishers. Unlike the traditional or 'surface' web, dark web
users need to know the web address of the website they wish to visit in advance. For example, on
the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is
ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion.[13] This prevents dark web
marketplaces from being easily identifiable to authorities or those not in the know.

58.     A sophisticated black market exists on the dark web where criminals can buy or
sell malware, firearms, drugs, and frequently, personal and medical information like the Personal
Information at issue here.[14] The digital character of Personal Information stolen in data breaches
lends itself to dark web transactions because it is immediately transmissible over the internet and
the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand
requires a physical delivery address. Nefarious actors can readily purchase usernames and
passwords for online streaming services, stolen financial information and account login
credentials, and Social Security numbers, dates of birth and medical information.[15] As Microsoft

---

[12] *What Is the Dark Web?,* Experian, *available at* https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last accessed October 9, 2024).
[13] *Id.*
[14] *What is the Dark Web?* – Microsoft 365, *available at* https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last accessed October 9, 2024).
[15] *Id*.; *What Is the Dark Web?,* Experian, *available at* https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/(last accessed October 9, 2024).

warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others."[16]

59.    Plaintiff and Class Members' Personal Information is a valuable commodity, a market exists for Plaintiff and Class Members' Personal Information (which is why the Data Breach was perpetrated in the first place), and Plaintiff and Class Members' Personal Information is being likely being sold by hackers on the dark web (as that is the *modus operandi* of data thieves) – as a result, Plaintiff and Class Members have lost the value of their Personal Information, which is sufficient to plausibly allege injury arising from a data breach.

60.    An active and robust legitimate marketplace for Personal Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[17] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[18][19] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[20]

61.    The Personal Information stolen in this specific Data Breach was particularly harmful.

62.    Personal Information can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in

---

[16] *What is the Dark Web?* – Microsoft 365, *available at* https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last accessed October 9, 2024).

[17] https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last accessed October 9, 2024).

**[18]** https://datacoup.com/ (last accessed October 9, 2024).

[19] https://digi.me/about-us (last accessed October 9, 2024).

[20] Nielsen Computer & Mobile Panel, Frequently Asked Questions, available at https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last accessed October 9, 2024).

combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[21]

63.    Given the nature of Defendant's Data Breach, as well as the delay in notification to Class Members, it is foreseeable that the compromised Personal Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class Members' Personal Information can easily obtain Plaintiff's and Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

64.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures.

***Plaintiff's Experience***

65.    Plaintiff was required to provide and did provide his Personal Information to Defendant as a condition of receiving healthcare services.

66.    To date, Defendant has done next to nothing to adequately protect Plaintiff and Class Members, or to compensate them for their injuries sustained in this Data Breach particularly given the fact that Plaintiff's Personal Information has already been "impacted" in the Data Breach and likely been made available on the dark web to anyone wishing to purchase it.

67.    Defendant has not compensated Plaintiff and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords and other actions.

68.    Plaintiff and Class Members have been further damaged by the compromise of their Personal Information in the Data Breach which was "impacted" and is in the hands of

---

[21] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the Personal Information.

69.     Plaintiff typically takes measures to protect his Personal Information and is very careful about sharing his Personal Information. Plaintiff has never knowingly transmitted unencrypted Personal Information over the internet or other unsecured source.

70.     Plaintiff stores any documents containing his Personal Information in a safe and secure location, and he diligently chooses unique usernames and passwords for his online accounts.

71.     As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In response to the Data Breach, Plaintiff has spent significant time monitoring his accounts and credit score, changing his online account passwords and verifying the legitimacy of the Notice and researching the Data Breach. This is time that was lost and unproductive and took away from other activities and duties.

72.     Specifically, since the date of the breach Plaintiff has spent over twenty-four (24) hours taking action to mitigate the harm he has suffered. Plaintiff (1) has spent, and continues to spend, considerable time and effort actively monitoring his accounts and credit; and (2) he has lost sleep due to the stress and anxiety he now suffers from the fear of his Personal Information being exposed, misused and sold on the black market.

73.     Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his Personal Information — a form of intangible property that he entrusted to Defendant for the purpose of receiving services from Cardiology Associates, which was compromised in and as a result of the Data Breach.

74.    Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

75.    Plaintiff suffered emotional distress and increased stress and anxiety as a result of the Data Breach because of the actions he has been forced to undertake, the loss of control over his most intimate information, and the fact that he must remain vigilant for the remainder of his life.

76.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Personal Information being placed in the hands of criminals.

77.    Defendant obtained and continues to maintain Plaintiff's Personal Information and has a continuing legal duty and obligation to protect that Personal Information from unauthorized access and disclosure. Defendant required the Personal Information from Plaintiff as a condition of receiving healthcare services from Defendant. Plaintiff, however, would not have entrusted his Personal Information to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's Personal Information was compromised and disclosed as a result of the Data Breach.

78.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.    CLASS ACTION ALLEGATIONS

79.    Plaintiff brings this suit on behalf of himself and a class of similarly situated individuals under Rule 23 of the Alabama Rules of Civil Procedure, which is preliminarily defined as:

> All persons Defendant has identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").

80.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

81.    **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, it is likely thousands, if not hundreds of thousands, of individuals had their Personal Information compromised in this Data Breach. The Class is apparently identifiable within Defendant's records.

82.    **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

 i.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Personal Information;

 ii.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

iv.   Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

v.   Whether Defendant owed a duty to Class Members to safeguard their Personal Information;

vi.   Whether Defendant breached its duty to Class Members to safeguard their Personal Information;

vii.   Whether computer hackers obtained Class Members' Personal Information in the Data Breach;

viii.   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

ix.   Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

x.   Whether Defendant's conduct was negligent; and;

xi.   Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

83.   **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's Personal Information, like that of every other Class member, was compromised in the Data Breach.

84.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

85.    **Predominance.** Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

86.    **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

87.    Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

88.    Likewise, particular issues under ALA. R. CIV. P. 23(b)(3) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

xii.   Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Personal Information;

xiii.   Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

xiv.   Whether Defendant's failure to institute adequate protective security measures amounted to negligence; and

xv.   Whether Defendant failed to take commercially reasonable steps to safeguard Personal Information.

89.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

90.    Plaintiff hereby repeats and realleges paragraphs 1 through 85 of this Complaint and incorporates them by reference herein.

91.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Personal Information for pecuniary gain, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

92.    Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Personal Information.

22

93.    Defendant had full knowledge of the sensitivity of the Personal Information and the types of harm that Plaintiff and Class Members could and would suffer if the Personal Information were wrongfully disclosed. The harm that Plaintiff and Class Members experienced was within the zone of foreseeable harm known to Defendant.

94.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Personal Information, a mandatory step in receiving healthcare services from Defendant. While this special relationship exists independent from any contract, it is recognized by Defendant's privacy practices, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered Personal Information as part of their business and was solely responsible for and in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a resulting data breach.

95.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

96.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and the frequency of data breaches in general.

97.    Defendant also had a common law duty to prevent foreseeable harm to others. Plaintiff and the Class were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Personal Information of Plaintiff and the Class, the critical importance of adequately safeguarding that Personal Information, and the necessity of encrypting Personal

Information stored on Defendant's systems. It was foreseeable that Plaintiff and Class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

98.     Defendant's conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's wrongful conduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decision not to comply with industry standards for the safekeeping of Plaintiff's and the Class's Personal Information, including basic encryption techniques available to Defendant.

99.     Plaintiff and the Class had and have no ability to protect their Personal Information that was in, and remains in, Defendant's possession.

100.    Defendant was in a position to effectively protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

101.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Personal Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

102.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Personal Information within Defendant's possession.

103.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Personal Information.

104.    Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Personal Information within Defendant's possession might have been compromised and precisely the type of information compromised.

105.    Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Personal Information to be compromised.

106.    Pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), Defendant had a separate and independent duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Personal Information.

107.    The FTCA is intended, in part, to protect individuals whose Personal Information is maintained by another and who are unable to safeguard their information as they cannot exercise control or direction over the data security practices.

108.    Plaintiff and the members of the Class are within the class of persons that the FTCA was intended to protect as their Personal Information was collected and maintained by Defendant and they were unable to exercise control over Defendant's data security practices.

109.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against.

110.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the members of the Class.

111.    Defendant breached its duties to Plaintiff and the members of the Class under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Personal Information.

112.    Had Plaintiff and the members of the Class known that Defendant would not adequately protect their Personal Information, Plaintiff and the members of the Class would not have entrusted Defendant with their Personal Information.

113.    Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

114.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the members of the Class, they would not have been injured.

115.    The injury and harm suffered by Plaintiff and the members of the Class was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiff and the members of the Class to experience the foreseeable harms associated with the exposure of their Personal Information.

116.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Personal Information is used; (iii) the compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal Information for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of

productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information in their continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of Personal Information as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

117.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

118.    Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information in its continued possession.

119.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff and the Class are now at an increased risk of identity theft or fraud.

120.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiff is entitled to and demand actual, consequential, and nominal damages and injunctive relief to be determined at trial.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On behalf of Plaintiff and the Class)**

121.    Plaintiff hereby repeats and realleges paragraphs 1 through 85 of this Complaint and incorporates them by reference herein.

122.    Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Personal Information.

123.    Pursuant to HIPAA, 42 U.S.C. § 1302d *et seq*., Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class members' Personal Information.

124.    Pursuant to HIPAA, Defendant had a duty to render the electronic Personal Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." *See* definition of encryption at 45 C.F.R. § 164.304.

125.    Defendant breached its duties to Plaintiff and Class members under the FTC Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Personal Information.

126.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se.*

28

127.    The injuries to Plaintiff and Class members resulting from the Data Breach were directly and indirectly caused by Defendant's violation of the statutes described herein.

128.    Plaintiff and Class members were within the class of persons the Federal Trade Commission Act and HIPAA were intended to protect and the type of harm that resulted from the Data Breach was the type of harm these statues were intended to guard against.

129.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

130.    The injuries and harms suffered by Plaintiff and Class members were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that Defendant's breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

131.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injuries and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## COUNT III
### BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiff and the Class)**

132.    Plaintiff hereby repeats and realleges paragraphs 1 through 85 of this Complaint and incorporates them by reference herein.

133.    Plaintiff and the Class entrusted their Personal Information to Defendant as a condition of receiving healthcare services from Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect

such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen

134.    At the time Defendant acquired the Personal Information of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the Personal Information and not take unjustified risks when storing the Personal Information.

135.    Implicit in the agreements between Plaintiff and Class Members and Defendant to provide Personal Information, was the latter's obligation to: (a) use such Personal Information for business purposes only, (b) take reasonable steps to safeguard that Personal Information, (c) prevent unauthorized disclosures of the Personal Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Personal Information, (e) reasonably safeguard and protect the Personal Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Personal Information only under conditions that kept such information secure and confidential.

136.    Plaintiff and the Class would not have entrusted their Personal Information to Defendant had they known that Defendant would make the Personal Information internet-accessible, not encrypt sensitive data elements such as Social Security numbers, and not delete the Personal Information that Defendant no longer had a reasonable need to maintain it.

137.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

138.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

139.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

140.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

### COUNT IV
### INVASION OF PRIVACY – INTRUSION UPON SECLUSION
#### (On Behalf of Plaintiff and the Class)

141.    Plaintiff hereby repeats and realleges paragraphs 1 through 85 of this Complaint and incorporates them by reference herein.

142.    Plaintiff and Class Members have a legally protected privacy interest in their Personal Information, which is and was collected, stored and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their Personal Information against foreseeable unauthorized access, as occurred with the Data Breach.

143.    Plaintiff and Class Members reasonably expected that Defendant would protect and secure their Personal Information from unauthorized parties and that their Personal Information

would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

144.    Defendant intentionally intruded into Plaintiff's and Class Members' seclusion by disclosing without permission their Personal Information to a third party. Defendant's acts and omissions giving rise to the Data Breach were intentional in that the decisions to implement lax security and failure to timely notice Plaintiff and the Class were undertaking willfully and intentionally.

145.    By failing to keep Plaintiff's and Class Members' Personal Information secure, and disclosing Personal Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion by, inter alia:

      a.   intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

      b.   invading their privacy by improperly using their Personal Information obtained for a specific purpose for another purpose, or disclosing it to unauthorized persons;

      c.   failing to adequately secure their Personal Information from disclosure to unauthorized persons; and

      d.   enabling the disclosure of their Personal Information without consent.

146.    This invasion of privacy resulted from Defendant's intentional failure to properly secure and maintain Plaintiff's and Class Members' Personal Information, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded and private data.

147.    Plaintiff's and Class Members' Personal Information is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff's and Class

Members' Personal Information, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

148.    The disclosure of Plaintiff's and Class Members' Personal Information to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

149.    Defendant's willful and reckless conduct that permitted unauthorized access, exfiltration and disclosure of Plaintiff's and Class Members' sensitive Personal Information is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

150.    The unauthorized access, exfiltration, and disclosure of Plaintiff's and Class Members' Personal Information was without their consent, and in violation of various statutes, regulations and other laws.

151.    As a direct and proximate result of Defendant's intrusion upon seclusion, Plaintiff and Class Members suffered injury and sustained actual losses and damages as alleged herein. Plaintiff and Class Members alternatively seek an award of nominal damages.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT/QUASI CONTRACT**
**(On Behalf of Plaintiff and the Class)**

152.    Plaintiff hereby repeats and realleges paragraphs 1 through 85 of this Complaint and incorporates them by reference herein.

153.    This Count is brought in the alternative to Count III, Breach of Implied Contract.

154.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable Personal Information. In so conferring this benefit, Plaintiff and Class Members understood that part of the benefit Defendant derived from the

Personal Information would be applied to data security efforts to safeguard the Personal Information.

155.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information.

156.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

157.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

158.    Defendant acquired the monetary benefit and Personal Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

159.    If Plaintiff and Class Members knew that Defendant had not secured their Personal Information, they would not have agreed to provide their Personal Information to Defendant.

160.    Plaintiff and Class Members have no adequate remedy at law.

161.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Personal Information is used; (iii) the compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with

the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Personal Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Personal Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Personal Information in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

162.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

163.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf Of Plaintiff And the Class)**

164.    Plaintiff hereby repeats and realleges paragraphs 1 through 85 of this Complaint and incorporate them by reference herein.

165.    In providing their Personal Information, directly or indirectly, to Defendant, Plaintiff and Class members justifiably placed a special confidence in Defendant to act in good

faith and with due regard to interests of Plaintiff and class members to safeguard and keep confidential that Personal Information.

166.    Defendant accepted the special confidence Plaintiff and Class members placed in it, as evidenced by its assertion that it is committed to protecting the privacy of Plaintiff's and Class Members' personal information as detailed in its Privacy Policy.[22]

167.    In light of the special relationship between Defendant and Plaintiff and Class members, whereby Defendant became a guardian of Plaintiff's and Class members' Personal Information, Defendant became a fiduciary by its undertaking and guardianship of the Personal Information, to act primarily for the benefit of its customers, including Plaintiff and Class members, for the safeguarding of Plaintiff's and Class members' Personal Information.

168.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of its relationship with Defendants' customers and employees, in particular, to keep secure the Personal Information of its customers and employees.

169.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to protect the integrity of the systems containing Plaintiff's and Class members' Personal Information.

170.    Defendant breached its fiduciary duties to Plaintiff and class members by otherwise failing to safeguard Plaintiff's and Class members' Personal Information.

171.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and class members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of Personal Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data

---

[22] See Privacy Policy, available at https://www.cardassoc.com/privacy-policy

Breach; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Personal Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information.

172.    As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class defined herein, prays for judgment as against Defendant as follows:

a.) For an Order certifying this action as a Class action and appointing Plaintiff and his counsel to represent the Class;

b.) For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Personal Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c.) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to data collection, storage, and safety, and to disclose with specificity the type of Personal Information compromised during the Breach;

d.) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e.) Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class;

f.) For an award of actual damages, compensatory damages, statutory damages and statutory penalties, in an amount to be determined, as allowable by law;

g.) For an award of punitive damages, as allowable by law;

h.) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i.) Pre- and post-judgment interest on any amounts awarded and,

j.) All such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED: January 21, 2025

Respectfully submitted,

By: *s/R. Brent Irby*
R. Brent Irby
**LYONS IRBY, ATTORNEYS AT LAW**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Tel: (205) 936-8281
brent@lyonsirby.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. *
Joseph Kanee, Esq.*
scott@edelberglaw.com
joseph@edelsberglaw.com
20900 NE 30TH Ave, #417
Aventura, FL 33180
Tel: (786) 933-2775

*\* Pro Hac Vice forthcoming*

**DEFENDANT TO BE SERVED VIA REGISTERED AGENT:**

GERRY M. PHILLIPS, M.D.
3715 DAUPHIN ST STE 4400
MOBILE, AL 36608